IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DEMETRIUS COOPER,

                         Plaintiff,

v.                                                     OPINION and ORDER

CHARLES J. DOMBECK,                                  23-cv-771-jdp

                        Defendant.

---

      Plaintiff Demetrius Cooper, proceeding without counsel, is an inmate at Waupun Correctional Institution. Cooper alleges that defendant Charles J. Dombeck, an advance practice nurse prescriber with the Wisconsin Department of Corrections, discontinued Cooper's prescription for pregabalin and failed to provide alternative pain medication for his chronic fibromyalgia and nerve pain. Cooper proceeds on Eighth Amendment medical care and Wisconsin-law medical negligence claims.

      Dombeck moves for summary judgment. Dkt. 33. The evidence shows that Dombeck conducted a diligent investigation of Cooper's medical history, treatment, and symptoms, including consulting with DOC physicians. All his decisions were based on his medical judgment. No reasonable juror could conclude, based on the totality of Dombeck's care, that he consciously disregarded any of Cooper's medical conditions. I will grant Dombeck's summary judgment motion and dismiss the case. I will deny Cooper's motion to strike certain summary judgment submissions from Dombeck because they comply with the court's summary judgment procedures, and I will deny Cooper's trial-related motions as moot. Dkt. 63; Dkt. 66; Dkt. 67; Dkt. 69.

UNDISPUTED FACTS

The following facts are undisputed excepted where noted.

Cooper has been in Department of Corrections custody since 2012. Dombeck has worked as an advanced practice nurse prescriber (APNP) for the DOC since 2021. Cooper's medical diagnoses that are material to this lawsuit are fibromyalgia and inguinal nerve pain (i.e., nerve pain in the groin between the lower part of the abdomen and thighs). Chronic widespread pain throughout the body may be a symptom of fibromyalgia.

Cooper's interactions with Dombeck began only in 2022, when he transferred to Waupun Correction Institution. But his prior medical history is relevant to Dombeck's decisions.

A. Care before transfer to Waupun Correctional Institution

In November 2020, Cooper received a pelvic ultrasound that revealed a left inguinal hernia. The next day, Cooper was seen by nondefendant APNP Meggan Baudek at Gundersen Rheumatology for a possible diagnosis of fibromyalgia. Cooper reported muscle and joint pain over his entire body, a family history of fibromyalgia, and that Tylenol and ibuprofen provided no relief. Baudek diagnosed Cooper with fibromyalgia and prescribed gabapentin. Dkt. 36-1 at 297–98.

In early December 2020, Cooper had surgery to repair the inguinal hernia. A week later, nondefendant Dr. Amber Crawford at Gundersen General Surgery saw Cooper, who complained of nerve pain at the incision site that extended to his scrotum and hip. Crawford said that gabapentin could help the nerve pain that he described.

About a week later, nondefendant Dr. Michael Gross started Cooper on gabapentin as an urgent non-formulary request based on Crawford's recommendation. Advanced care

2

providers, physicians and APNPs, use the DOC's formulary when writing prescriptions for prisoners. The providers must request approval of non-formulary drugs from the medical director, associate medical director, or psychiatry director.

In late December 2020, Gross saw Cooper, who complained of fibromyalgia pain and nerve pain in his groin area. Gross noted that the nerve pain was likely ilioinguinal nerve disruption. The same day, nondefendant Associate Medical Director Gina Buono approved Gross's request for gabapentin.

In April 2021, nondefendant APNP Jeanie Kramer saw Cooper for a hunger strike assessment. Cooper previously complained that gabapentin wasn't stopping his pain, so Kramer suggested a trial of pregabalin. Cooper declined the pregabalin and accepted an increased dose of gabapentin.

In February 2022, nondefendant Dr. Justin Boge saw Cooper at Gundersen Neuroscience for continued complaints of inguinal pain. Boge recommended diclofenac as a conservative measure and a trial of Lyrica (a brand name for pregabalin) as an alternative to gabapentin. Dkt. 36-1 at 281–82.

In late July 2022, nondefendant Dr. Shirley Godiwalla noted that gabapentin was not helpful for Cooper's fibromyalgia and requested pregabalin as a non-formulary medication. Dkt. 36-1 at 58. Buono approved the request. *Id.* at 166–67.

**B. Care after transfer to Waupun Correctional Institution**

Cooper was transferred to Waupun Correctional Institution (WCI) on August 29, 2022. Cooper didn't receive his pregabalin upon his transfer to WCI.

Cooper had another assigned provider at the time, but Dombeck was assigned to review his chart to see what medical orders should be continued from his old institution. Dkt. 36

3

¶¶ 53, 135. (Cooper purports to dispute this fact, but the evidence he cites does not raise a genuine dispute. *See* Dkt. 51 ¶¶ 56–59.)

Dombeck reviewed Cooper's chart August 31, 2022. Dkt. 36-1 at 105. Dombeck ordered a lab test to determine whether the level of pregabalin in Cooper's system was therapeutic. *Id.* at 141. Cooper's result was 2.3 ug/mL. *Id.* at 164. Dombeck says that result "essentially just show[ed] that the medication was in [Cooper's] system." Dkt. 36 ¶ 122. Cooper says that the result showed that his medication was "therapeutically working as prescribed." *See* Dkt. 51 ¶ 90.

Dombeck reviewed Cooper's medical file going back to approximately 2019, around which time the DOC was transitioning from paper files to an electronic medical records system. *See* Dkt. 62 ¶ 49. (Cooper says Dombeck reviewed earlier paper files too, but this statement is immaterial.) Dombeck says that he "noted that [Cooper's] diagnoses of fibromyalgia and inguinal nerve pain were non-objective diagnoses, meaning they were made based on subjective reports from [Cooper] as opposed to objective clinical findings." Dkt. 36 ¶ 59. Cooper disagrees, noting that three outside specialists diagnosed him with those conditions. Dkt. 51 ¶ 31. Cooper doesn't directly dispute Dombeck's statement that his medical file lacked physical signs of pain such as changes in vital signs, sweating, grimacing, flinching, moaning, guarding, or distraction by pain. *See* Dkt. 62 ¶¶ 56–57; *see also* Dkt. 36-1 at 136, 139–140, 173–200, 223, 259, 287. Nor does Cooper directly dispute Dombeck's statement that he would expect to see these signs if a patient were in enough pain to be prescribed with pregabalin. *See* Dkt. 62 ¶ 57.

On August 31, 2022, Cooper submitted a health services request declaring that he was on a hunger and liquid strike. Dkt. 36-1 at 306. Two days later, Cooper submitted a health

4

services request in which he said that he was on a hunger and liquid strike to protest a violation of DAI Policy 300.00.57, which relates to hunger strikes. *Id.* at 305.

That day, Dombeck emailed nondefendant Dr. Laura Sukowaty and asked her to clarify Cooper's pregabalin order. Dkt. 36-1 at 105. Dombeck noted that some requests had been denied, but that pregabalin was later approved by Buono. *Id.* Four days later, Dombeck emailed Sukowaty and said that he would discontinue the gabapentin prescription unless Sukowaty objected. *Id.* at 104. Dombeck wrote that: (1) Cooper hadn't taken adequate trials of "usual medications for chronic pain treatment"; (2) there was no objective evidence to support his subjective complaints of pain; and (3) his chart showed that he had been consistently functional even though his chart said that the gabapentin was ineffective. *Id.* Sukowaty agreed with Dombeck's decision. *Id.*

Dombeck says that an adequate medication trial requires the patient to take the medication as prescribed from 4 to 12 weeks. Dkt. 36 ¶ 91. Cooper disagrees, but he doesn't directly dispute that he failed to complete a 4-to-12 week trial of other pain medications. *See* Dkt. 62 ¶ 88 (abandoning a low dose of duloxetine after eight days), ¶ 90 (abandoning amitriptyline after an unknown period of time not alleged to be longer than four weeks); ¶ 93 (abandoning topiramate after eight days). Dombeck admits that Cooper took desipramine for nine weeks, but he says, and Cooper doesn't directly dispute, that this trial was inadequate because the dose was never increased. *Id.* ¶ 92.

On September 6, 2022, Dombeck saw Cooper. Dkt. 36-1 at 125. Dombeck noted that Cooper was on a hunger strike, and that he informed Cooper that he was discontinuing pregabalin because his chart didn't show adequate trials of other pain medications. *Id.* Dombeck also noted that a trial of other, more evidence-based medications could be discussed

5

at Cooper's follow-up appointment with his primary care provider. *Id.* at 126. Cooper's medical file says that he had diclofenac at that time. *Id.* at 148. Cooper says that he didn't have diclofenac and that it was for arthritis, not for fibromyalgia or nerve pain. Dkt. 51 ¶¶ 101–02.

Dombeck discontinued Cooper's prescriptions for Tylenol and ibuprofen at that visit. Dombeck says that he made that decision because Cooper was on a hunger and liquid strike, and taking those medications posed a risk to his safety. Dkt. 36 ¶ 128. Dombeck also says that he anticipated that Cooper could have those medications restarted once he was off his hunger strike and his provider had assessed him. *Id.*

Cooper describes the September 6 visit differently. Cooper says that there was no discussion or evaluation, and that Dombeck discontinued all treatment, saying that he didn't treat fibromyalgia or nerve pain. Dkt. 51 ¶ 66. Cooper also says that he told Dombeck that the medication was helping his pain, and that he asked for any type of pain medication. *Id.* ¶¶ 76, 78. Furthermore, Cooper says that Dombeck knew that he had made only an idle threat to go on a hunger strike. *Id.* ¶ 75.

The next day, Dombeck emailed Sukowaty, Buono, and APNP Diana Simmons, Cooper's assigned primary care provider. Dkt. 36-1 at 103. Dombeck said that he would leave the gabapentin prescription discontinued unless any of them objected, which no one did. *See id.* at 102–03. Cooper says that after Dombeck discontinued his pregabalin, he started experiencing severe fibromyalgia and nerve pain, along with these symptoms: headaches, muscle aches, dizziness, depression, nausea, stomach cramps, excessive sweating, insomnia, restlessness, irritability, and nervousness. Dkt. 51 ¶ 80.

On September 26, 2022, Cooper submitted a health services request in which he complained about extreme pain and stated that his pregabalin was wrongfully discontinued

6

because it was effectively treating his pain. Dkt. 36-1 at 300. Dombeck responded a day later, writing that he had already told Cooper why he discontinued his pregabalin and noting that Cooper had an upcoming appointment with Simmons. *Id.*

Cooper says that he encountered Dombeck that day by chance. Cooper says that he told Dombeck about his pain and symptoms, but that he blew off his concerns. Dkt. 51 ¶¶ 82–83. According to Cooper, Dombeck responded, "Maybe you can convince . . . Simmons; but if it was left up to me, you wouldn't receive anything." *Id.* ¶ 83.

Simmons saw Cooper on October 7, 2022, and she prescribed topiramate. Three weeks later, Simmons responded to a health services request in which Cooper complained that he was in pain and that topiramate was ineffective. Dkt. 36-1 at 299. Simmons refused to prescribe gabapentin or pregabalin, and she noted that Cooper had taken only four doses of his new medication before complaining of side effects. *See id.*

I will discuss additional facts as they become relevant to the analysis.

ANALYSIS

A. **Preliminary matter**

I will deny Cooper's motion to strike Dombeck's reply in support of his proposed facts and his response to Cooper's proposed findings of fact. Dkt. 63. Dombeck supported his submissions with citations to admissible evidence where necessary, and they substantially comply with the court's summary judgment procedures. Cooper's mere disagreement with Dombeck's proposed facts is not a basis to disregard them.

## B. Eighth Amendment medical care claim

Cooper alleges that Dombeck discontinued his prescription for pregabalin and failed to provide alternative pain medication for his chronic fibromyalgia and nerve pain. Cooper also alleges that after Dombeck made that decision, he ignored several health services requests in which Cooper complained that he was in severe pain and needed medication.

The Eighth Amendment prohibits prison officials from consciously disregarding the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish a medical care claim, Cooper must show that he had an objectively serious medical condition that Dombeck consciously disregarded. *See Cesal v. Moats*, 851 F.3d 714, 721 (7th Cir. 2017). Dombeck concedes that Cooper's chronic fibromyalgia and nerve pain are a serious medical need.

The issue is whether Dombeck consciously disregarded that need. Conscious disregard requires that Dombeck is subjectively aware of that need. *See id.* at 721. That means that Dombeck knew of facts from which the inference could be drawn that a substantial risk of serious harm existed, and he actually drew that inference. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Conscious disregard involves intentional or reckless conduct, not mere negligence. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010).

The Eighth Amendment entitles prisoners to "adequate medical care," that is, "reasonable measures to meet a substantial risk of serious harm." *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006). The Eighth Amendment doesn't require "specific care" or "the best care possible." *Id.*; *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Disagreement between Cooper and Dombeck, or between medical professionals, about the proper course of

treatment isn't enough to show conscious disregard. *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996).

Ignoring a prisoner's request for medical assistance outright can be enough to show conscious disregard of medical needs. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (en banc). If a medical professional has provided some care for a prisoner's condition, he consciously disregards the serious medical need only if his care is so inadequate that it demonstrates an absence of professional judgment, that is, that no minimally competent professional would have responded in that way in the circumstances. *See Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 763 (7th Cir. 2021); *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 989 (7th Cir. 1998).

The evidence shows that Dombeck based his decision to discontinue Cooper's pregabalin prescription on his medical judgment. Dombeck took reasonable steps to investigate whether the medication should be discontinued. Dombeck reviewed Cooper's medical file and found no physical signs of pain to confirm his complaints of pain, which he expected to see if Cooper were in enough pain to be prescribed with pregabalin. Cooper notes that other providers had prescribed him pregabalin, but Dombeck's disagreement with their medical judgment doesn't show conscious disregard. Dombeck also determined that Cooper's medical file showed that he hadn't given other pain medications adequate trials. Cooper says that the trials were adequate because those medications were causing him serious side effects, but there's no evidence that Dombeck thought that to be the case. Dombeck might have been mistaken, but good-faith mistakes are not conscious disregard.

Dombeck diligently investigated Cooper's health needs. When he was assigned to review Cooper's chart, Dombeck promptly ordered a lab test to determine whether the level of

9

pregabalin in his system was therapeutic. Dombeck also consulted with Sukowaty, raised his concerns about the pregabalin order, and gave her an opportunity to object to his decision to discontinue it. Dombeck's detailed review of Cooper's medical file, order for lab work, and consultation with another provider show that his decision to discontinue pregabalin was carefully considered, easily meeting the Eighth Amendment standard. *Cf. Walker v. Peters*, 233 F.3d 494, 501 (7th Cir. 2000) (courts must consider the "totality" of a prisoner's care when deciding whether a medical professional has consciously disregarded his serious medical need).

Cooper contends that Dombeck's visit with him in early September 2022 was perfunctory, which shows conscious disregard. Dkt. 50 at 6–9. Cooper says that correctional officers told him before the visit that Dombeck had informed them that he would be discontinuing pregabalin. Dkt. 51 ¶ 55. But the correctional officers' alleged statements are inadmissible hearsay. *See Carlisle v. Deere & Co.*, 576 F.3d 649, 655 (7th Cir. 2009) (courts may not rely on inadmissible hearsay on summary judgment). And, even if Dombeck conducted the visit in a perfunctory manner, the evidence shows that he conducted a reasonable examination of Cooper's medical history before making the decision to discontinue pregabalin.

Cooper contends that Dombeck consciously disregarded his chronic pain because he left him without any medication after discontinuing pregabalin. But Dombeck says that he discontinued Tylenol and ibuprofen because Cooper was on a hunger and liquid strike and those medications posed a risk to his safety. Cooper says that Dombeck knew that he had made only an idle threat to go on a hunger strike. But Cooper's medical file states that he repeatedly refused meal trays and hunger strike assessments from September 1 until at least September 12, 2022. Dkt. 36-1 at 76–81. Even if Cooper was secretly eating canteen food and displayed no signs of acute distress during that period, Dombeck had reason to believe that he was

10

refusing food and liquids, especially considering his history of hunger strikes. Dombeck also says that he anticipated that Cooper could have those medications restarted once he was off his hunger strike and Simmons had assessed him. The evidence shows that Dombeck based his decision to discontinue Tylenol and ibuprofen on his medical judgment.

The evidence further refutes the contention that Dombeck thought that he was leaving Cooper without any pain treatment. When Dombeck discontinued pregabalin, Tylenol, and ibuprofen, Cooper's medical file said that he had diclofenac. That medication had been recommended to treat inguinal nerve pain, not just arthritis. Dkt. 36-1 at 281–82. Also, physical therapists gave Cooper home exercise programs in 2020 and 2021 to help with, among other problems, fibromyalgia. *Id.* at 159, 162. Cooper disputes that he had diclofenac, as well as the feasibility of performing physical therapy given his reported pain levels, but there's no evidence that Dombeck thought that to be the case.

Cooper faults Dombeck for ignoring health service requests that he submitted after Dombeck discontinued pregabalin and before Simmons started to see him in October. But Dombeck says that the health service request submitted on September 26, 2022, was the only request that he received during this period. Dkt. 36 ¶ 142. And the evidence shows that Dombeck based his decision to discontinue pregabalin on his medical judgment, so his failure to act in response to that request doesn't show conscious disregard. Also, Dombeck noted that Cooper had an upcoming appointment with Simmons, who saw him ten days later. Cooper says that Dombeck saw other health service requests that he submitted, but other medical staff answered those requests. *See* Dkt. 57-31. Cooper hasn't explained a basis for personal knowledge of how those requests were triaged. *See* Dkt. 51 ¶¶ 7, 86; *see also Flowers v. Kia Motors*

11

*Fin.*, 105 F.4th 939, 946 (7th Cir. 2024) ("[S]peculation is insufficient to defeat a summary judgment motion.").

Cooper contends that Dombeck's actions at their alleged encounter on September 27, 2022, show conscious disregard. In particular, Cooper faults Dombeck for not acting even though Cooper told him that he was experiencing severe pain and withdrawal symptoms. Even if this encounter occurred, Dombeck had already decided that it was medically appropriate to discontinue pregabalin. Dombeck based this decision in part on his determination that the level of pregabalin in Cooper's system wasn't therapeutic. Cooper disagrees because his result, 2.3 ug/mL, was within the proposed dose-related range of 2-10 ug/mL. *See* Dkt. 36-1 at 164. But the lab report said that the therapeutic range was not well established, *id.*, and Cooper hasn't presented any medical evidence directly contradicting Dombeck's opinion about the therapeutic value of Cooper's level. Dombeck had decided that Cooper's pregabalin was medically unnecessary and below a therapeutic level, so there's no basis to infer that he thought that discontinuing it caused Cooper's symptoms. Also, Simmons was Cooper's provider at that time, so Dombeck had reason to think that she would address his concerns about withdrawal. Indeed, there's no dispute that Simmons saw Cooper ten days later. Dombeck's alleged actions on September 27 don't show conscious disregard.

Cooper contends that Dombeck's decision to discontinue pregabalin showed conscious disregard because he didn't follow the recommendation of outside specialists. This contention fails because Dombeck based his decision on his own medical judgment, and he is not required to defer to the opinions of other doctors. *See Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) ("Failing to provide care for a *non-medical reason*, when that care was recommended by a medical specialist, can constitute [conscious disregard of medical needs]." (emphasis added));

12

*see also Wilson v. Adams*, 901 F.3d 816, 822 (7th Cir. 2018) (stating that a prison doctor doesn't always have to follow the recommendation of a specialist).

Along those lines, Cooper contends that Dombeck has no foundation for his opinion that it was medically appropriate to discontinue pregabalin because he lacks expertise in the areas of rheumatology and osteopathic neuroscience. Dkt. 50 at 21. But Dombeck is competent to explain the medical basis his decision; he doesn't have to be a specialist to do that.

To sum up, no reasonable juror could conclude that Dombeck consciously disregarded Cooper's fibromyalgia and nerve pain. I will grant summary judgment to Dombeck.

**C. State-law medical negligence claim**

Without the federal claim, the court would not have jurisdiction over Cooper's state law claim on the basis of diversity because there's no evidence that he has different citizenship than Dombeck. *Cf.* Dkt. 1 at 1.

When all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). I'll follow that practice here and relinquish jurisdiction over Cooper's medical negligence claim without evaluating its merits.

Cooper may pursue his medical negligence claim in state court, subject to Wisconsin statutes of limitations (and other potentially applicable procedural bars). Those limitations periods have been tolled while this case has been pending, but they will begin again 30 days from now. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under [the court's supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.").

I will deny as moot Cooper's trial-related motions. Dkt. 66; Dkt. 67; Dkt. 69.

ORDER

IT IS ORDERED that:

1. Defendant Charles J. Dombeck's motion for summary judgment, Dkt. 33, is GRANTED.

2. Jurisdiction is relinquished over plaintiff Demetrius Cooper's state-law medical negligence claim.

3. Plaintiff's motion to strike, Dkt. 63, is DENIED.

4. Plaintiff's trial-related motions, Dkts. 66–67 and 69, are DENIED as moot.

5. The clerk is directed to enter judgment and close the case.

Entered March 21, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge